## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

WELLPATH, LLC;
CORRECTIONAL HEALTHCARE
  COMPANIES, LLC;
CORRECTIONAL HEALTHCARE HOLDING
  COMPANY, LLC;
CHC COMPANIES, LLC;
WELLPATH GROUP HOLDINGS, LLC;
  and
JUDICIAL CORRECTION SERVICES, LLC,

                Plaintiffs,

     v.

EVANSTON INSURANCE COMPANY,

                Defendant.

Civil Action
No.: 20-cv-4885

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Wellpath, LLC (f/k/a Correct Care Solutions, LLC) ("CCS"), Correctional

Healthcare Companies, LLC (f/k/a Correctional Healthcare Companies, Inc. and CHC

Companies, Ltd.) ("CHC"), Correctional Healthcare Holding Company, LLC (f/k/a Correctional

Healthcare Holding Company, Inc.) ("CHC Holding"), CHC Companies, LLC (f/k/a CHC

Companies, Inc.) ("CHC Companies"), Wellpath Group Holdings, LLC (f/k/a Correct Care

Solutions Group Holdings, LLC) ("CCS Group"), and Judicial Correction Services, LLC (f/k/a

Judicial Corrections Services, Inc.) ("JCS") (all of the foregoing entities are collectively referred

to as the "Policyholders"), by their undersigned counsel, Reed Smith LLP, bring this action

against Defendant Evanston Insurance Company ("Evanston"), and in support thereof, allege as

follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing and bad faith conduct under 42 Pa. Cons. Stat. Ann. § 8371.  These claims arise out of Evanston's: a) wrongful denials of coverage; b) refusals to pay policy benefits where the obligation to do so is clear; and c) failure to protect the Policyholders' interests while consistently ignoring their contractual obligations and pursuing their own self-interest.  This pattern of bad faith conduct has manifested itself towards the Policyholders in the foregoing ways regarding a variety of underlying lawsuits brought against the Policyholders in the Commonwealth of Pennsylvania and elsewhere.

2.      The Policyholders operate certain businesses including providing private healthcare services in correctional facilities and (previously) private probation services.

## THE PARTIES

3.      Plaintiff CHC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1283 Murfreesboro Rd. Suite 500, Nashville, TN 37217.  Among other things, CHC provides private healthcare services under contracts with correctional facilities.

4.      Plaintiff CHC Companies is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1283 Murfreesboro Rd. Suite 500, Nashville, TN 37217.  CHC Companies is the direct parent company of CHC.

5.      Plaintiff CHC Holding is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1283 Murfreesboro Rd. Suite 500, Nashville, TN 37217. CHC Holding is the direct parent company of CHC Companies.

6.      Plaintiff CCS Group is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1283 Murfreesboro Rd. Suite 500,

Nashville, TN 37217.  CCS Group is the parent company of Jessamine Healthcare, Inc., which is the direct parent company of CHC Holding.

7.     Plaintiff JCS is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 328A E. New York Ave., Deland, FL 32724.  JCS provides private probation services under contracts with local municipalities. CHC Companies previously owned all of the outstanding membership interests of JCS.

8.     Plaintiff CCS is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 1283 Murfreesboro Rd. Suite 500, Nashville, TN 37217.  Among other things, CCS provides private healthcare services under contracts with state and local governmental agencies that operate correctional facilities.

9.     Plaintiff CHC Companies sold its membership interest in JCS, but retained the right to sue on behalf of JCS in relation to the insurance policies and claims associated with this Complaint.

10.     A chart depicting the structure of CCS Group and related Plaintiff entities is attached hereto as Exhibit "A."

11.     Each of the Plaintiffs is a policyholder or insured under one or more of the insurance policies sold by the Defendant Evanston that are described in greater detail below.

12.     Defendant Evanston Insurance Company is an insurance company organized and incorporated under the laws of the State of Illinois with its principal place of business in Rosemont, Illinois.  At all relevant times, upon information and belief, Evanston has been licensed to conduct the business of insurance in the Commonwealth of Pennsylvania, and it has conducted and continues to conduct business throughout the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

13.     The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

14.     This Court has personal jurisdiction over Evanston by virtue of its business activities within the Commonwealth, including the sale of insurance policies in the Commonwealth and its handling of claims made against the Policyholders that are located in the Commonwealth, several of which are subjects of this civil action.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the Policyholders' claims occurred within this District.

## THE INSURANCE POLICIES

16.     Evanston sold six general and professional liability policies to CHC, CCS Group, and CCS Intermediate Holdings, LLC ("CCSI"), a former subsidiary of CCS Group, that are designed to provide insurance coverage for the general liability and professional liability risks that entities like the Policyholders typically encounter in their normal business operations.  These policies are numbered MM823222, MM824178, SM904110, SM904115, SM910742, and SM910743 (collectively, the "Evanston Policies" or the "Policies"), and each includes coverage for both General Liability and Professional Liability.

### The Locum Tenens and Contract Staffing or "CHC" Policies

### The MM823222 Policy

17.     Evanston sold to CHC Holding d/b/a CHC, a Locum Tenens and Contract Staffing General Liability and Professional Liability policy, number MM823222 (the

"MM823222 Policy") with a policy period of March 31, 2013 to March 31, 2014.  A copy of the MM823222 Policy is attached hereto as Exhibit "B."

18.     As regards Professional Liability insurance coverage, the Coverage A Named Insureds include "Employed and Contracted Physicians, Surgeons, Dentists, Pharmacist and Allied Healthcare professionals providing Medical Services through the Coverage B Named Insured."  The Coverage B Named Insured is CHC Holding in the MM823222 Policy.  CHC, CHC Companies, and JCS are additional Named Insureds listed by endorsement.

19.     As regards General Liability insurance coverage, coverage is provided to CHC Holding, and by endorsement coverage is provided to the Coverage B Named Insureds.

20.     As regards Professional Liability coverage, the MM823222 Policy provides the following limits of liability:

$1,000,000 for Each Claim for Coverage A
$1,000,000 for Each Claim for Coverage B
$1,000,000 for a Single Per Patient Claim under Coverage A and/or Coverage B
$5,000,000 individually applied to both Coverage A and Coverage B Claims
$10,000,000 Professional Liability Coverage Part Aggregate limit.

21.     As regards General Liability coverage, the MM823222 Policy provides the following limits of liability:

$1,000,000 "Each Occurrence" for Coverage A
$1,000,000 "Each Person or Organization" for Coverage B
$5,000,000 General Liability Coverage Part Aggregate limit.

22.     Based on the Self-Insured Retention Endorsement, the self-insured retention ("SIR") applicable to a Professional Liability Claim is $100,000.   Under the Professional Liability coverage part, the term "Claim" is defined, in pertinent part, as the "service of suit … against the Insured involving Professional Healthcare Services."

23.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage A (Bodily Injury and Property Damage Liability) is $100,000 for Each Occurrence, while the SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is $100,000 for each Claim or Each Person or Organization.  Under the General Liability coverage part, the term "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  "Each Person or Organization" is not defined.

24.     The SIR endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.  The broad definition of "Claim" in the MM823222 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.  No policy term states that more than one SIR may apply to any one suit or Claim for which coverage is sought under the MM823222 Policy.

**The MM824178 Policy**

25.     Evanston sold to CHC Holding d/b/a CHC, a Locum Tenens and Contract Staffing General Liability and Professional Liability policy, number MM824178 (the "MM824178 Policy") with a policy period of January 1, 2014 to January 1, 2015, with tail coverage through January 1, 2019.  A copy of the MM824178 Policy is attached hereto as Exhibit "C."

26.     As regards Professional Liability insurance coverage, the Coverage A Named Insureds include "Employed and Contracted Physicians and Allied Healthcare professionals providing Medical Services through the Coverage B Named Insured."  The Coverage B Named Insured is CHC Holding in the MM824178 Policy.  CHC, CHC Companies, CCS Group and JCS are additional Named Insureds by endorsement.

27.     As regards General Liability insurance coverage, coverage is provided to CHC

Holding and additional Named Insureds including CHC, CHC Companies, CCS Group and JCS.

28.     As regards Professional Liability coverage, the MM824178 Policy provides the

following limits of liability:

> $1,000,000 "Each Claim" for Coverage A (Individual Professional Liability)
> $1,000,000 "Each Claim" for Coverage B (Organizational Liability)
> $5,000,000  Professional Liability Coverage A Claims Aggregate
> $10,000,000 Professional Liability Coverage B Claims Aggregate
> $10,000,000 Professional Liability Coverage Part Aggregate.

29.     As regards General Liability coverage, the MM824178 Policy provides the

following limits of liability:

> $1,000,000 "Each Occurrence" for Coverage A
> $1,000,000 "Each Person or Organization" for Coverage B
> $5,000,000 General Liability Coverage Part Aggregate limit.

30.     Based on a SIR Endorsement, the SIR applicable to a Claim for Professional

Liability is $100,000.  Under the Professional Liability coverage part, the term "Claim" is

defined, in pertinent part, as "a demand [received by the Insured] for monetary damages or

services …"

31.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage

A (Bodily Injury and Property Damage Liability) is $100,000 for Each Occurrence, while the

SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is

$100,000 for Each Person or Organization.  Under the General Liability coverage part, the term

"Occurrence" is defined as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  "Each Person or Organization" is not

defined.

32.     The SIR Endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.  The broad definition of "Claim" in the MM824178 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.  No policy term states that more than one Self-Insured Retention may apply to any one suit or Claim for which coverage is sought under the MM824178 Policy.

<b><u>The Specified Medical Professions or "CCS" Policies</u></b>

<u>**The SM904110 Policy**</u>

33.     Evanston sold to CCSI a Specified Medical Professions General Liability and Professional Liability Policy No. SM904110 (the "SM904110 Policy").  The SM904110 Policy is an occurrence and claims-made policy with a policy period from November 15, 2014 to November 15, 2015.  CCS and CCS Group are Named Insureds by endorsement for the SM904110 Policy.  A copy of the SM904110 Policy is attached hereto as Exhibit "D."

34.     As regards Professional Liability coverage, by endorsement, the SM904110 Policy provides the following limits of liability:

> $1,000,000 Each Claim.
> $3,000,000 Each Location Aggregate
> $15,000,000 Aggregate All Coverages, All Locations.

35.     As regards General Liability coverage, by endorsement, the SM904110 Policy provides the following limits of liability:

> $1,000,000 Each Occurrence Coverage A (Bodily Injury and Property Damage Liability)
> $1,000,000 Each Person or Organization Coverage B (Personal Injury and Advertising Injury Liability).
> $3,000,000 Aggregate Each Location
> $15,000,000 Aggregate All Coverages, All Locations.

36.     Based on a SIR Endorsement, the SIR applicable to Professional Liability is $500,000 for each Claim.  The term "Claim" is defined, in pertinent part, as "a demand received by the Insured for monetary damages or services …"

37.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage A (Bodily Injury and Property Damage Liability) is $500,000 Each Occurrence, while the SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is $500,000 Each Person or Organization.  Under the General Liability coverage part, the term "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  "Each Person or Organization" is not defined.

38.     The SIR Endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.   The broad definition of "Claim" in the SM904110 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.  No policy term states that more than one Self-Insured Retention may apply to any one suit or Claim for which coverage is sought under the SM904110 Policy.

**The SM904115 Policy**

39.     Evanston sold to CCSI a Locum Tenens and Contract Staffing General Liability and Professional Liability policy, number SM904115 (the "SM904115 Policy") with a policy period November 15, 2014 to November 15, 2015.  A copy of the SM904115 Policy is attached hereto as Exhibit "E."

40.     As regards Professional Liability insurance coverage, the Coverage A Named Insureds include "Employed and Contracted Physicians and Allied Healthcare professionals

providing Medical Services through the Coverage B Named Insured and participating in the

Indiana Patient Compensation Fund, the Louisiana Compensation Fund or the Pennsylvania

Compensation Fund."  The Coverage B Named Insured is CCS and CCS Group by endorsement.

    41.    As regards General Liability insurance coverage, coverage is provided to CCS

and additional Named Insureds including CCS Group.

    42.    General Liability Coverage A provides coverage to Named Insureds for Claims

made as a result of Bodily Injury and Property Damage Liability, while General Liability

Coverage B provides coverage to Named Insureds for Claims made as a result of Personal and

Advertising Injury Liability.

    43.    As regards Professional Liability coverage, by endorsement titled, "Professional

Liability – State Limits of Liability and State Compensation Fund Amendatory Endorsement,"

the SM904115 Policy provides for different limits of liability for Individual Professional

Liability (Coverage A) and for Organization Liability (Coverage B), depending on whether

Coverage A Named Insureds and Coverage B Named Insureds are participants in the Indiana,

Louisiana or Pennsylvania Patient Compensation Funds.

    44.    As regards General Liability coverage, by endorsement titled "Limits of Liability

Per Location Endorsement," the SM904115 Policy provides the following limits of liability:

> $1,000,000 Each Occurrence for Coverage A (Bodily Injury and Property Damage)
> $1,000,000 Each Person or Organization for Coverage B (Personal Injury and
> Advertising Injury Liability).
> $3,000,000 Each Location Aggregate
> $15,000,000 Aggregate All Coverages, All Locations.

    45.    Based on the SIR Endorsement, the SIR applicable to Professional Liability is

$50,000 for Each Claim.  Under the Professional Liability coverage part, the term "Claim" is

defined, in pertinent part, as the "service of suit … against the Insured involving Professional

Healthcare Services."  For claims naming as defendants individual healthcare providers enrolled in an applicable Patient Compensation Fund ("PCF Fund") and CCS, CCS is responsible for one $50,000 SIR per Claim.

46.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage A (Bodily Injury and Property Damage Liability) is $50,000 Each Occurrence, while the SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is $50,000 Each Person or Organization.  Under the General Liability coverage part, the term "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  "Each Person or Organization" is not defined.

47.     The SIR endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.  The broad definition of "Claim" in the SM904115 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.

48.     No policy term addresses the potential for a claim, lawsuit, or occurrence to trigger both the SM904115 Policy and the SM904110 Policy with its larger SIR (discussed above).  Further, no term states that SIRs under multiple Evanston policies must be satisfied before benefits under any single Evanston policy will be paid.  Finally, no term requires application of the larger SIR in that situation.

49.     Under controlling law, the Policyholders have the right to select which policy or coverage should respond first when a claim, lawsuit or occurrence triggers multiple policies or coverages, and the Policyholders have the right to order how any additional coverage will apply in a way that maximizes the insurance coverage available to the policyholder.

**The SM910742 Policy**

50.     Evanston sold to CCS Group a Specified Medical Professions General Liability and Professional Liability Policy No. SM910742 (the "SM910742 Policy").  The SM910742 Policy is an occurrence and claims-made policy with a policy period from November 15, 2015 to November 15, 2016.  CCS Group is the Named Insured under the SM910742 Policy, and CCS, CHC, CHC Holding, CHC Companies, and JCS are additional Named Insureds by endorsement. A copy of the SM910742 Policy is attached hereto as Exhibit "F."

51.     As regards Professional Liability coverage, by endorsement, the SM910742 Policy provides the following limits of liability:

> $1,000,000 Each Claim.
> $3,000,000 Each Location Aggregate
> $15,000,000 Aggregate All Coverages, All Locations.

52.     As regards General Liability coverage, by endorsement, the SM910742 Policy provides the following limits of liability:

> $1,000,000 Each Occurrence Coverage A (Bodily Injury and Property Damage Liability)
> $1,000,000 Each Person or Organization Coverage B (Personal Injury and Advertising Injury Liability).
> $3,000,000 Aggregate Each Location
> $15,000,000 Aggregate All Coverages, All Locations.

53.     General Liability Coverage A provides coverage to Named Insureds for Claims made as a result of Bodily Injury and Property Damage Liability, while General Liability Coverage B provides coverage to Named Insureds for Claims made as a result of Personal and Advertising Injury Liability.

54.     Based on a SIR Endorsement, the SIR applicable to a Professional Liability Claim is $750,000.  Under the Professional Liability coverage part, the term "Claim" is defined as "the

Insured's receipt of: (1) A written demand for Damages or Professional Services; or (2) The service of suit or institution of arbitration proceedings against the Insured seeking Damages."

55.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage A (Bodily Injury and Property Damage Liability) is $750,000 Each Occurrence, while the SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is $750,000 Each Person or Organization.  Under the General Liability coverage part, the term "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  "Each Person or Organization" is not defined.

56.     The SIR Endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.  The broad definition of "Claim" in the SM910742 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.

57.     No policy term states that more than one Self-Insured Retention may apply to any one suit or Claim for which coverage is sought under the SM910742 Policy.

**The SM910743 Policy**

58.     Evanston sold to CCS Group a Locum Tenens and Contract Staffing General Liability and Professional Liability policy, number SM910743 (the "SM910743 Policy") with a policy period November 15, 2015 to November 15, 2016.  A copy of the SM910743 Policy is attached hereto as Exhibit "G."

59.     With respect to Professional Liability insurance coverage, the Coverage A Named Insureds include "Employed and Contracted Physicians and Allied Healthcare professionals providing Medical Services through the Coverage B Named Insured and participating in the

Indiana Patient Compensation Fund, the Louisiana Compensation Fund or the Pennsylvania

Compensation Fund," while the Coverage B Named Insured is CCS Group, as well as additional

Named Insureds listed in endorsements to the Policy, including CCS, CHC, CHC Holding, CHC

Companies and JCS.

     60.     With respect to General Liability coverage, the Named Insured is CCS Group as

well as additional Named Insureds, including CCS, CHC, CHC Holding, CHC Companies and

JCS, based on the Additional Named Insured Endorsement.

     61.     General Liability Coverage A provides coverage to Named Insureds for Claims

made as a result of Bodily Injury and Property Damage Liability, while General Liability

Coverage B provides coverage to Named Insureds for Claims made as a result of Personal and

Advertising Injury Liability.

     62.     As regards General Liability coverage, by endorsement, the SM910743 Policy

provides the following limits of liability:

> $1,000,000 Each Occurrence for Coverage A (Bodily Injury and Property Damage
> Liability)
> $1,000,000 Each Person or Organization for Coverage B (Personal Injury and
> Advertising Injury Liability)
> $3,000,000 Each Location Aggregate
> $15,000,000 Aggregate All Coverages, All Locations.

     63.     As regards Professional Liability coverage, by endorsement titled, "Professional

Liability – State Limits of Liability and State Compensation Fund Amendatory Endorsement,"

the SM910743 Policy provides for different limits of liability for Individual Professional

Liability (Coverage A) and for Organization Liability (Coverage B), depending on whether

Coverage A Named Insureds and Coverage B Named Insureds are participants in the Indiana,

Louisiana or Pennsylvania Patient Compensation Funds.

64.     Based on a SIR Endorsement, the SIR applicable to a Professional Liability Claim is $50,000.  For claims naming as defendants individual healthcare providers enrolled in an applicable PCF Fund and CCS, CCS is responsible for one $50,000 SIR, on a per Claim basis. Under the Professional Liability coverage part, the term "Claim" is defined as "the Insured's receipt of: (1) A demand for monetary damages or services involving Professional Healthcare Services; or (2) The service of suit or institution of arbitration proceedings against the Insured involving Professional Healthcare Services."

65.     Based on the SIR Endorsement, the SIR applicable to General Liability Coverage A (Bodily Injury and Property Damage Liability) is $50,000 Each Occurrence, while the SIR applicable to General Liability Coverage B (Personal and Advertising Injury Liability) is $50,000 Each Person or Organization.  Under the General Liability coverage part, the term "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions:  "Each Person or Organization" is not defined.

66.     The SIR endorsement also states only one SIR may be charged per "Claim," for either General Liability or Professional Liability.  The broad definition of "Claim" in the SM910743 Policy includes "service of suit" giving notice of intent to hold the policyholder responsible for Personal and Advertising Injury.

67.     No policy term addresses the potential for a claim, lawsuit, or occurrence to trigger both the SM910743 Policy and the SM910742 Policy with its larger SIR (discussed above).  Further, no term states that SIRs under multiple Evanston policies must be satisfied before benefits under any single Evanston policy will be paid.  Finally, no term requires application of the larger SIR in that situation.

68.     Under controlling law, the Policyholders have the right to select which policy or coverage should respond first when a claim, lawsuit or occurrence triggers multiple policies or coverages, and the Policyholders have the right to order how any additional coverage will apply in a way that maximizes the insurance coverage available to the policyholder.

## THE UNDERLYING CASES

69.     The Policies provide coverage for the attached list of underlying cases and claims pending against the Policyholders, related entities and subsidiaries, as well as individual healthcare providers in certain cases, in relation to the claimants' experiences with medical care or probation services provided by one of the Policyholder entities (the "Underlying Claims"). The list of Underlying Claims is attached hereto as Exhibit "H."

70.     In each of the Underlying Claims, however, Evanston has refused to honor its obligations under the applicable Policy and has taken improper coverage-minimizing positions to its benefit and to the wrongful detriment of the Policyholders.

71.     In many instances, Evanston has flip-flopped on its coverage position multiple times, to the detriment of the Policyholders, with no justification or reason provided other than changes in personnel handling the Policyholders' claims.

72.     In several instances, Evanston has provided no coverage position at all, and has repeatedly failed to do so despite multiple requests from the Policyholders to cure the issues.

## The Medical Cases

### Chimenti

73.     The Underlying Claim *Chimenti, et al. v. PA Department of Corrections, et al.*, was filed in the District Court for the Eastern District of Pennsylvania, as a class action against CCS and individual medical providers, Dr. Cowan, Dr. Kephart, and Dr. Frommer, among others.  The complaint in *Chimenti, et al.* alleged negligence in the plaintiffs' medical treatment

while incarcerated in the Pennsylvania Department of Corrections, including at State Correctional Institution at Graterford in Montgomery County.  This case has been settled and dismissed.

74.     Although Evanston has acknowledged in writing that, because both CCS and all named medical providers participated in a "PCF" Fund, the applicable SIR for the *Chimenti* claim is $50,000 under the SM904115 Policy, Evanston has failed to reimburse amounts incurred by CCS in excess of the SIR for the defense and settlement of the Chimenti claim.

75.     The Policyholders paid in excess of $50,000 for defense and settlement of this action, resulting in a substantial amount owed to Policyholders by Evanston.

76.     In a letter dated September 6, 2018, Evanston promised to review claim expenses "for reasonableness" and make payment to the Policyholders, but to date no payment has been made by Evanston.

77.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has failed to pay or reimburse amounts due to the Policyholders. As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**<u>Parrish</u>**

78.     The Underlying Claim *Morris Parrish v. Corizon Health, Inc., et al.*, was filed in the District Court for the Eastern District of Pennsylvania, against CCS and certain individual medical providers, among others, concerning alleged negligence in the plaintiff's medical treatment while incarcerated in the Pennsylvania state correctional system at State Correctional Institute – Graterford, in Montgomery County.  This case has been settled and dismissed.

79. Although Evanston has acknowledged that, because both CCS and all named medical providers participated in a "PCF" Fund, the applicable SIR for the *Parrish* claim is $50,000 under the SM910743 Policy, Evanston has failed to reimburse amounts incurred by CCS in excess of the SIR for the defense and settlement of the *Parrish* claim.

80. The Policyholders paid in excess of $50,000 for defense and settlement of this action, but Evanston has not contributed to any of these amounts resulting in a substantial amount owed to Policyholders by Evanston.

81. This Underlying Claim is within the scope of the coverage provided by the Evanston Policies. Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has failed to pay or reimburse amounts due to the Policyholders. As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Cornish**

82. The Underlying Claim *John Cornish v. City of Philadelphia, et al.*, was filed in the District Court for the Eastern District of Pennsylvania, against CCS, among others, concerning alleged negligence in the plaintiff's medical treatment while in the Philadelphia Prison System and the Department of Corrections. This case has been settled and dismissed.

83. Although Evanston initially agreed with CCS that the applicable SIR for the *Cornish* claim is $50,000 under the SM904115 Policy and made certain claim expense and settlement payments to the Policyholders as a result, Evanston subsequently and in bad faith altered its coverage position by way of letter dated September 6, 2018. In that letter, Evanston asserted that a $500,000 SIR applied under Policy SM904110 (later renewed as Policy SM910742), which Evanston termed the "Master Policy," and demanded reimbursement payments from CCS in excess of the previously-acknowledged $50,000 SIR.

84.     Evanston's revised bad faith position flatly contradicted other statements in Evanston's September 6, 2018 letter, particularly that "[i]f only participants in an enumerated Fund are named as defendants, whether such participants are corporate entities or individuals, the applicable SIR is $50,000 for that Claim pursuant to the PCF Policies."

85.     To date, although Evanston appropriately paid a substantial amount for the defense and settlement of the *Cornish* action in excess of the $50,000 SIR, Evanston is continuing to demand reimbursement from the Policyholders and is continuing to rely upon its bad faith position concerning the applicable SIR.

86.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although Evanston appropriately paid for this claim in excess of the applicable SIR, Evanston is now making inappropriate and bad faith demands upon the Policyholders for reimbursement, against which the Policyholders are now forced to defend themselves.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Broadus**

87.     The Underlying Claim *Harvey Broadus v. Prison Health Services, Inc., c/o CT Corporation Systems; and Michael Herbik, D.O., c/o State Correctional Institute at Fayette*, was filed in the District Court for the Western District of Pennsylvania, against CCS and an individual medical provider, Dr. Herbik, among others, concerning alleged negligence in the plaintiff's medical treatment while incarcerated in the State Correctional Institute at Fayette. This case has been settled and dismissed.

88.     Although Evanston acknowledged coverage in writing and agreed the applicable SIR for the Broadus claim is $50,000 under the SM910742 Policy because both CCS and Dr.

Herbik participated in a "PCF" Fund, Evanston has failed to reimburse amounts incurred by CCS in excess of the SIR for the defense and settlement of the *Broadus* claim.

89.     The Policyholders paid in excess of $50,000 for defense and settlement of this action, but Evanston has not contributed to any of these amounts resulting in a substantial amount owed to Policyholders by Evanston.

90.     In a letter dated September 6, 2018, Evanston promised to review invoices "for reasonableness" and make payment to the Policyholders, but to date no payment has been made by Evanston.

91.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has failed to pay or reimburse amounts due to the Policyholders. As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Brogdan**

92.     The Underlying Claim *Sharon Brogdan v. Correct Care Solutions, LLC, et al.*, was filed in the District Court for the Western District of Pennsylvania, against CCS involving a CCS medical facility in Cambridge Springs, PA ("CCS Cambridge Springs"), and certain individual medical providers, among others, concerning alleged negligence in the plaintiff's medical treatment at CCS Cambridge Springs.  This case has been settled and dismissed.

93.     Although the named defendants include "participants" in the PCF fund, CCS, Dr. Paris Burke Horan and Dr. Bashline, Evanston has asserted that CCS and a physician assistant, Telega, were not participants in the Fund.  As a result, Evanston contended a total aggregate SIR of $750,000 applied under the SM910743 Policy and SM910742 Policy, and that it owed no

payments to CCS for defense expenses incurred in excess of the $50,000 SIR under the under the SM910743 Policy.

94.     Evanston's position directly conflicts with its position in its September 6, 2018 letter and its position in relation to the *Broadus* and *Chimenti* claims, in that CCS is a participant in the relevant Fund, and the *Brogdan* claim includes both an insured CCS corporate entity Fund participant and two insured individuals who are Fund participants.

95.     This scenario falls squarely within the coverage description contained in Evanston's September 6, 2018 correspondence that, "if an insured individual and an insured CCS corporate entity are named as defendants and one of them does not participate in an enumerated Fund, the $50,000 SIR pursuant to the PCF Policies will apply to the insured that does participate in the Fund …[.]"

96.     As a result, the $50,000 SIR under the SM910473 Policy should apply to CCS for the *Brogdan* claim, particularly if no liability can be allocated to a non-fund participant.

97.     The Policyholders paid in excess of $50,000 for defense and settlement of this action, but to date, Evanston has reimbursed only a portion of the legal fees and expenses for this action, resulting in a substantial amount owed to Policyholders by Evanston.

98.     Although Evanston owes damages to the Policyholders, Evanston is demanding reimbursement from the Policyholders for the amounts Evanston appropriately paid as legal fees and expenses in excess of the $50,000 SIR.

99.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has failed to pay or reimburse amounts due to the Policyholders and instead is making inappropriate and bad faith demands upon the Policyholders, against

which the Policyholders are now forced to defend themselves.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**JCS Probation Cases**

100.    Multiple actions have been filed against CCS, CHC, and CHC Companies and their former subsidiary, JCS, in connection with probation services performed by JCS in seven Alabama and Georgia municipalities.  The specific allegations differ from lawsuit to lawsuit, but the allegations against these Policyholders include alleged constitutional violations and torts such as:  (i) false imprisonment or malicious prosecution, (ii) failure to provide counsel to plaintiffs when they were indigent defendants in municipal court proceedings, (iii) failure to apprise plaintiffs of their constitutional rights, (iv) failure to conduct indigency hearings, delinquency hearings, or probation hearings or make findings before imposing fines or incarcerating plaintiffs, (v) imposing fees and/or probation terms in excess of statutory maximums, and (vi) detaining individuals without jurisdiction. A list of the JCS Probation Cases is set forth in the list of Underlying Claims, referenced above and attached as Exhibit "H."

101.    In connection with the JCS Probation Cases, the underlying plaintiffs (and purported class members) seek declaratory judgments, monetary damages, including damages and fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, or tort claims based on allegations of false arrest, false detention or malicious prosecution.

**Ray**

102.    The Underlying Claim *Gina Kay Ray, et al. v. Judicial Correction Services, Inc., et al.*, Case No. 2:12-cv-02819, United States District Court, Northern District of Alabama, was initially filed against JCS concerning probation services in the City of Childersburg, and includes various city and statewide class action claims that trigger coverage under the Evanston Policies

both for General Liability relating to allegations of wrongful detention and false imprisonment, among other things, and Professional Liability relating to services provided by JCS.

103.    CCS and CHC were named as defendants in the *Ray* case on June 19, 2015, during the Evanston coverage period, when pleadings were amended.  On September 12, 2017, the Court ruled on motions for summary judgment dismissing all claims against CHC and CCS, as well as certain claims against JCS.

104.    Evanston was repeatedly asked to participate in settlement negotiations regarding the *Ray* case, and on July 13, 2018 counsel for CCS and CHC explained by letter that Evanston must recognize coverage for this case and pay incurred defense costs in excess of the SIR because, among other reasons, the pleadings were amended to add CCS and CHC as defendants on June 19, 2015, during the policy period of the SM904110 Policy and the SM904115 Policy.

105.    Although Evanston at one point provided settlement authority for a potential resolution of the *Ray* case, Evanston subsequently denied coverage in full by way of letter dated October 4, 2018.  Despite requests, Evanston has refused to provide any coverage for defense costs expended in the defense of its Policyholders and insureds, CCS, CHC and JCS, in excess of the SIR and Evanston withdrew from all negotiations concerning *Ray* and the other JCS Probation Cases.  Following Evanston's refusal to assist the Policyholders, this case was settled without any contribution from Evanston.

106.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect the Policyholders and has failed to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement amounts in excess of the $50,000 SIR of the SM904115 Policy

or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**McCullough**

107.    The Underlying Claim *Angela McCullough, et al. v. City of Montgomery, Alabama, et al.*, Case No. 2:15-cv-463, United States District Court, Middle District of Alabama, was filed against JCS, and is one of two cases involving JCS's probation services in the City of Montgomery.  Following rulings on motions to dismiss, the plaintiffs' claims include torts for false imprisonment and abuse of process, in addition to allegations that JCS committed constitutional violations.  Discovery is now closed.

108.    Although Evanston acknowledged coverage for the matter in 2015 due to allegations of wrongful detention and false imprisonment, among other things, Evanston has not contributed any amounts toward the defense of this case.

109.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018. Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Carter**

110.    The underlying case *Aldaress Carter, et al. v. City of Montgomery, et al.*, Case No. 2:15-cv-555, United States District Court, Middle District of Alabama, was filed against

JCS, CHC and CHC Companies, and is one of two cases involving JCS's probation services in the City of Montgomery.  Following rulings on motions to dismiss, the plaintiffs' claims include allegations that JCS committed constitutional violations that trigger coverage under the Evanston Policies both for General Liability relating to allegations of wrongful detention and false imprisonment, among other things, and Professional Liability relating to services provided by JCS.  Discovery is now closed.

111.    Despite multiple requests, Evanston has not contributed any amounts toward the defense of this case.

112.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018. Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Carden**

113.    The underlying case *Dana Carden v. Town of Harpersville, et al.*, Case No. 2:15-cv-1381, United States District Court, Northern District of Alabama, was filed against JCS, CHC and CHC Companies concerning probation services in Harpersville.  On September 21, 2017, the court dismissed (i) all claims against CHC and CHC Companies, (ii) all class action claims; and (iii) a number of counts against JCS and the Town of Harpersville.

114.    Despite requests, Evanston has not contributed any amounts toward the defense of this case.  This case was settled and dismissed without any contribution from Evanston.

115.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement costs in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Hall**

116.    The underlying case *Robert C. Hall, et al. v. City of Fort Payne, et al.*, Case No. 4:15-cv-1656, United States District Court, Northern District of Alabama, was filed against JCS, CHC Companies, CHC and CCS, concerning probation services in Fort Payne and includes allegations that trigger coverage under the Evanston Policies relating to alleged wrongful detention and false imprisonment and relating to services provided by JCS, among other things.

117.    Despite requests, Evanston has not contributed any amounts toward the defense of this case.  Subsequently, this case was settled without any contribution from Evanston.

118.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders,

including defense expenses and settlement amounts in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR. As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Woods**

119.    The underlying case *Kari Woods, et al. v. City of Columbiana, et al.*, Case No. 2:15-cv-00493, United States District Court, Northern District of Alabama, was filed against JCS, CHC and CCS concerning probation services in the City of Columbiana. Among other things, the plaintiffs allege various constitutional torts under Section 1983 and make allegations that trigger coverage under the Evanston Policies relating to alleged wrongful detention and false imprisonment and relating to services provided by JCS.

120.    Despite requests, Evanston has not contributed any amounts toward the defense of this case. Subsequently, this case was settled without any contribution from Evanston.

121.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies. Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018. Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement amounts in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR. As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Chapman**

122.    The underlying case *Candice Chapman, et al. v. City of Clanton, et al.*, Case No. 2:15-cv-00125, United States District Court, Middle District of Alabama was filed against JCS,

CCS and CHC relating to JCS's provision of probation services in Clanton.  Among other things, the plaintiffs allege various constitutional torts under Section 1983 and make allegations that trigger coverage under the Evanston Policies relating to alleged wrongful detention and false imprisonment and relating to services provided by JCS.

123.    Despite requests, Evanston has not contributed any amounts toward the defense of this case.  This case was settled and dismissed without any contribution from Evanston.

124.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement costs in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Reynolds**

125.    The underlying case *Reynolds, et al. v. Judicial Correction Services, Inc., et al.*, Case No. 2:15-cv-00161, United States District Court, Middle District of Alabama was filed against JCS and the City of Clanton relating to JCS's provision of probation services in Clanton.

126.    Even though Evanston acknowledged coverage for this matter in writing in 2015 due to allegations of wrongful detention and false imprisonment, among other things, despite requests, Evanston has not contributed any amounts toward the defense of this case.  This case was settled and dismissed without any contribution from Evanston.

127.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies, and denied coverage in full by way of letter dated October 4, 2018.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement amounts in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Brickhouse**

128.     The underlying case *Brickhouse, et al. v. DeKalb County, Georgia, et al.*, Case No. 16A59481E4, DeKalb County, Georgia, was filed against JCS, relating to JCS's provision of probation services in Georgia.  This case was previously filed in federal court, Case No. 1:15-cv-02516 CAP, Northern District of Georgia.

129.     Although Evanston previously acknowledged in a letter dated August 31, 2015 to JCS, that the definition of "Personal Injury" under the CCS policies "fits the allegations in the complaint and coverage is appropriate under General Liability Coverage," Evanston subsequently denied coverage in full by way of letter dated October 4, 2018 and has not contributed any amounts toward the defense of this case.  Following Evanston's denial of coverage, the Policyholders defended the case to judgment which has been affirmed on appeal.

130.     The Policyholders paid at least $99,615.27 in expenses relating to this action, but Evanston has not contributed to any of these amounts.

131.     This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to

honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses in excess of the $50,000 SIR of the SM904115 Policy or any other potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Hamilton**

132.    The underlying case *Emerson Hamilton et al. v. Judicial Correction Services, LLC f/k/a Judicial Correction Services, Inc., CHC Companies LLC f/k/a CHC Companies Inc., Correct Care Solutions LLC et al.*, Case No. 2:18-cv-0093-RDP, United States District Court, Northern District of Alabama, was filed against JCS, CCS and CHC relating to JCS's provision of probation services in Childersburg, Harpersville, and Sylacauga, and remains pending.

133.    Despite requests, Evanston has not contributed any amounts toward the defense of this case.  Subsequently, this case was settled without any contribution from Evanston.

134.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies and includes allegations relating to alleged wrongful detention and false imprisonment and relating to services provided by the Policyholders.

135.    Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement amounts in excess of any potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**Eaton**

136.    The underlying case *Ethel Lee Eaton, et al. v. Judicial Correction Services, LLC f/k/a Judicial Correction Services, Inc. et al.*, Case No. 2:18-cv-01034, United States District Court, Northern District of Alabama was filed against JCS, CCS and CHC relating to JCS's provision of probation services, and includes alleged statewide class action claims.  Among other things, the plaintiffs allege various constitutional torts under Section 1983 and the claim includes allegations relating to alleged wrongful detention and false imprisonment and services provided by the Policyholders.

137.    Despite requests, Evanston has not contributed any amounts toward the defense of this case.  This case was settled and dismissed without any contribution from Evanston.

138.    This Underlying Claim is within the scope of the coverage provided by the Evanston Policies.  Although the Policyholders have made multiple demands upon Evanston to honor its obligations, Evanston has refused in bad faith to perform its obligation to protect them under the Evanston Policies.  Evanston has refused in bad faith to pay or reimburse amounts due to the Policyholders, including defense expenses and settlement amounts in excess of any potentially applicable SIR.  As a result, Evanston owes damages to the Policyholders in an amount in excess of $75,000.

**THE JCS PROBATION CASES: SUMMARY OF EVANSTON'S INCONSISTENT AND COVERAGE-MINIMIZING INTERPRETATIONS OF THE POLICIES**

139.    As set forth in greater detail above, Evanston sold a variety of general liability and professional liability policies to CHC and CCS and related entities that cover the claims defined above as the Underlying Claims.

140.    As set forth in greater detail below, Evanston has changed its coverage positions on numerous occasions with reference to the Underlying Claims, to the detriment of the Policyholders.

141.    In summary, Evanston initially accepted coverage for the JCS Probation Cases in 2014 and 2015 and applied SIRs correctly for several of the Medical Actions, but then began backtracking and asserting ever more oppressive positions, culminating in coverage denial positions taken in 2018 as to all of the Underlying Claims among other bad faith behavior.

142.    Evanston's most recent coverage denial positions in 2018 concerning the JCS Probation Cases and the Medical Actions were a result of Evanston's bad faith retaliatory response to the Policyholders' supplemental notice, dated July 31, 2018 ("July 2018 Supplemental Notice").

143.    In the Supplemental Notice the Policyholders sought coverage under the Evanston policies with lower $50,000 SIRs (the SM904115 Policy and SM910743 Policy) for the claims *Ray, Carden, Hall, Carter, McCullough, Woods, Chapman, Brickhouse, Eaton,* and *Hamilton*, which had previously been notified to Evanston under policies with larger SIRs.

144.    As a result of Evanston's refusals to defend, coverage denials, failures to provide coverage positions, and inconsistent coverage positions, the Policyholders have been left without any coverage afforded by the Evanston Policies that should be protecting the Policyholders' interests, and deprived of the full benefit of timely insurance payments, defense rights and peace of mind that are reasonably expected with the purchase of numerous general liability and professional liability insurance policies.

145.     As discussed in detail below, Evanston's efforts to impose multiple SIRs across the policy periods when it sold coverage perversely suggests less protection is offered to policyholders by purchasing more policies from Evanston.

## EVANSTON'S INITIAL COVERAGE POSITIONS FOR THE JCS PROBATION CASES

### Evanston Initially Accepts Coverage and Its Duty to Defend the Probation Cases

146.     Initially, Evanston recognized full coverage under the Policies and did not attempt to impose numerous SIRs for each of the Underlying Claims.

147.     By way of email dated January 16, 2014, Evanston explained to CHC that although no coverage opinion letter had been provided for an earlier JCS Probation Case known as "*Higginbotham*," "We don't send coverage letters unless there's a problem. So, we have full coverage for this (and all of the other cases). Thanks!"

148.     By way of letter dated August 31, 2015, Evanston wrote to CCS and agreed to defend JCS in relation to the *Brickhouse* case under a reservation of rights under Policy SM904110.  Among other things, Evanston recognized the coverage applied on both an occurrence and a claims-made basis for General Liability and Professional Liability, and Evanston acknowledged potential coverage for "personal injury and advertising injury liability."

149.     By way of letter dated August 31, 2015, Evanston wrote to CCS and agreed to defend JCS against the *Reynolds* case under a reservation of rights under Policy MM824178, recognizing the potential for coverage under this policy.

150.     By way of letters dated September 18, 2015 and November 30, 2015, Evanston again wrote to CCS to agree to defend JCS against the *McCullough* case, under a reservation of rights under Policy SM904110 and Policy MM824178, recognizing the potential for coverage under both policies.

**Evanston Reserves Additional Rights and Begins Withdrawing from the Defense of the Probation Cases**

151.    On March 16, 2016, Evanston met with the Policyholders and other insurers of the Policyholders concerning the *Ray* case and other JCS Probation Cases.  Although Evanston had not provided a coverage opinion letter in relation to the *Ray* case, Evanston nevertheless declined to participate in settlement efforts, based on the incorrect and previously unstated position that the Evanston Policies only apply to "healthcare-related claims."

152.    On March 24, 2016, counsel for Evanston requested additional information and documents regarding *Ray* and the other JCS Probation Cases, and this information was provided by the Policyholders to Evanston on March 28, 2016.

153.    By way of letters dated April 1, 2016 and April 8, 2016, the Policyholders requested Evanston reconsider its coverage obligations, including under General Liability Coverage B of the CHC Policies and Policy SM904110, for false arrest and malicious prosecution allegations, for example, and further requested settlement authority from Evanston for negotiations in the *Ray* case.

154.    By way of letter dated June 21, 2016, Evanston issued a "supplemental" reservation of rights addressing coverage for the *Reynolds, Carter, Carden, Hall, McCullough, Brickhouse, Woods* and *Chapman* matters, but ignoring similar requests concerning the *Ray* case.

155.    On July 6, 2016, the Policyholders promptly objected to the "supplemental" June 21, 2006 reservation of rights and demanded that Evanston clarify if it was reserving rights or denying coverage for the JCS Probation Cases.  On July 7, 2016, counsel for Evanston confirmed by email that its position is a reservation of rights and not a coverage denial.

156.    Subsequently, Evanston ignored requests for settlement authority in relation to the *Reynolds* case while making additional information requests of the Policyholders, and on

October 17, 2016, Evanston issued yet another "supplemental" reservation of rights addressing coverage for the *Reynolds, Carter, Carden, Hall, McCullough, Brickhouse, Woods* and *Chapman* cases.

157.    After the Policyholders demanded settlement authority from Evanston in relation to the JCS Probation Cases and provided additional requested information and documents to Evanston in August of 2017, Evanston agreed to provide settlement authority for a class settlement proposal in the *Ray* case by way of email dated August 17, 2017.

158.    As set forth above, the Policyholders provided their Supplemental Notice to Evanston in July 2018 to claim coverage for the JCS Probation Cases under the Evanston policies with lower $50,000 SIRs, namely the SM904115 Policy and SM910743 Policy.

## EVANSTON'S RETALIATORY RESPONSE TO THE SUPPLEMENTAL NOTICE

### Evanston Alters Its Application of SIRs for the Medical Cases

159.    To date, Evanston has failed to respond directly to the July 2018 Supplemental Notice.  Evanston has not provided any coverage opinion or reservation of rights regarding any of the JCS Probation Cases under the SM904115 Policy or SM910743 Policy.

160.    As a result of failing to reserve rights in a timely fashion under these policies or respond to the Supplemental Notice concerning coverage for the JCS Probation Cases, Evanston waived or is estopped from asserting any unstated coverage defenses.

161.    In retaliation to the Supplemental Notice, Evanston addressed coverage under the SM904115 Policy and SM910743 Policy for the *Broadus, Chimenti, Parrish, Cornish* and *Brogdan* claims, while ignoring potential coverage under these policies for the JCS Probation Cases, by way of a letter dated September 6, 2018.

162.     Among other things, Evanston took the view in its September 6, 2018 correspondence, that rather than providing greater protection to the Policyholders, purchasing additional insurance policies from Evanston results in greater (not less) loss to them: "if a claim is addressed under both the PCF Policies and Master Policies, each of their respective SIRs applies on a per Claim basis.  The result of having more than one policy respond to the Claim is that more than one and potentially different SIRs are applicable to the Claim."  Evanston also reversed its position regarding prior interpretations of the $50,000 SIR in what it terms the "PCF Policies" and inappropriately demanded reimbursements from the Policyholders for payments Evanston previously made.  The insurance company's effort to exact numerous SIRs from its policyholders is particularly inappropriate where the insurance company has not yet provided payments under any one of those policies.

**Evanston Denies Coverage for the Probation Cases and Alters Coverage Positions**

163.     In retaliation to the Supplemental Notice, Evanston shifted its position again and denied coverage, in full, for all of the JCS Probation Cases under the MM823222, MM824178, SM904110 and SM910742 Policies, while continuing to ignore the supplemental notices under the SM904115 Policy and SM910743 Policy, by way of letter dated October 4, 2018.

164.     The JCS Probation Cases for which Evanston specifically denied coverages included *Reynolds*, *Carter*, *Carden*, *Hall*, *Kennedy*, *McCullough*, *Brickhouse*, *Woods*, *Chapman*, *Hamilton*, *Eaton*, and *Ray*, as well as two earlier cases, *Thurman* and *Garrett*.  Despite prior correspondence, arguments and meetings specifically discussing coverage and settlement opportunities in relation to the *Ray* case, Evanston incorrectly stated the *Ray* case was never tendered to it.

165.    Evanston's alteration of its coverage views to the detriment of the Policyholders, as regards both the JCS Probation Cases and the Medical Actions, was a coordinated bad faith response to CCS providing its Supplemental Notice of the JCS Probation Cases under the SM904115 Policy and SM910743 Policy.

166.    As concerns General Liability coverage, Evanston both initially and subsequently acknowledged the JCS Probation Cases include allegations of false arrest, detention or imprisonment, or malicious prosecution in connection with probation services of JCS, and acknowledged JCS was added as an Additional Insured to the Evanston Policies.

167.    Nevertheless, in retaliation to the Supplemental Notice, Evanston's 2018 denial position relating to the JCS Probation Cases contradicts these prior positions, asserting that no General Liability coverage applies under any policy, because an exclusion precludes General Liability coverage for claims covered under other coverage parts—even though Evanston also denied coverage under the policies' Professional Liability coverage parts.

168.    Similarly, in retaliation to the Supplemental Notice, Evanston's 2018 denial withdrew its previous coverage-favoring acknowledgment of "an intent to cover the Insured for the professional services of JCS, including probation services." Evanston instead reasserted a previously-withdrawn defense that any alleged Personal and Advertising Injury involving JCS does not arise out of the Specified Products, Goods, Operations or Premises of the Insureds—despite Evanston's agreement to insure JCS.

169.    Evanston's 2018 denial position also contradicted numerous other admissions Evanston previously made to the Policyholders.  With respect to the Professional Liability coverage part, Evanston contradicted its previous admission that the *Carter, Carden, Hall*, and *McCullough* actions allege Professional Personal Injury arising out of Professional Services and

were first made within the policy period, and with respect to General Liability, Evanston

contradicted its admission that the Actions allege the Personal Injury offense of false

imprisonment.

170.    Although Evanston has repeatedly altered its position concerning whether the

Evanston Policies require satisfaction of SIRs on a per claimant basis or per Claim basis before

Evanston's duty to defend or indemnify may be triggered, the Evanston Policies state the SIR is

applicable to each "Claim" as concerns Professional Liability or to each "Occurrence and to each

person or organization" as concerns General Liability.  Because "Claim" is defined as a notice

received by the insured of an intention to hold the insured responsible for a Personal and

Advertising Injury, including the service of a suit, the relevant SIR may not be applied more than

once for each Suit or relevant Underlying Action.

171.    Evanston's new coverage denial position in 2018 that all JCS Probation Cases are

related and excluded from coverage is also retaliatory and contradicts both prior Evanston efforts

to impose numerous SIRs for each Claim or Claimant, and prior Evanston positions that

coverage for individual JCS cases depends on whether the case involves "acts committed or

occurring prior to November 15, 2013."

172.    Notwithstanding Evanston's ever-changing positions and 2018 coverage denial,

Evanston owes Professional Liability and General Liability coverage under the CHC Policies to

the Policyholders and additional named insureds CCS, CHC, CHCH and JCS, for the periods

November 15, 2014 to November 15, 2015 and November 15, 2015 to November 15, 2016, for

all JCS Probation Cases filed or amended to add insureds as parties during the policy period or

the policy's "tail" period, from March 31, 2013 to January 1, 2019 (Professional Liability), and

all JCS Probation Cases containing allegations of Personal and Advertising Injury during the

policy periods (General Liability). Those cases currently include *Brickhouse, Carden, Carter, Chapman, Hall, McCullough, Woods, Hamilton, Eaton,* and *Ray.*

173.   Notwithstanding Evanston's coverage denials, Evanston owes Professional Liability and General Liability coverage under the CCS Policies to the Policyholders and CCS as additional named insureds for those JCS Probation Cases first filed or amended to add CCS as a party during the policy periods (Professional Liability) and all JCS Probation Cases containing allegations of Personal and Advertising Injury during the policy periods (General Liability). Those cases currently include *Brickhouse, Carden, Carter, Chapman, Hall, McCullough, Woods, Hamilton, Eaton*, and *Ray*.

174.   Because the JCS Probation Cases are each individual Claims, only a single SIR may be applied by Evanston to each case before coverage is owed by Evanston, and the Policyholders have the right under applicable law to choose to apply the policies with lower retentions as "primary" insurance and then trigger policies with larger retentions as "excess" insurance, if necessary.

175.   Alternatively, if the JCS Probation Cases are aggregated for coverage purposes due to their alleged similarity or interrelationship, as suggested in Evanston's 2018 coverage denial, then only a single SIR is chargeable by Evanston for all of the JCS Probation Cases for all claims that are similar or interrelated to the first JCS Probation Cases acknowledged by Evanston, namely *Higginbothom*, *Reynolds*, and *McCullough*.

**EVANSTON'S PATTERN OF BAD FAITH CONDUCT**

176.   For each of the Underlying Actions, Evanston has been engaged in an ongoing, bad faith effort to compel its Policyholders to make "contributions" to settlements or to pay their own defense costs in full, without respect to terms of SIR Endorsements and numerous insurance

policies purportedly designed to provide protection to Policyholders and insureds in exchange for payment of premiums.

177.    In several instances where Evanston has recognized the potential for coverage, Evanston has insisted in bad faith on charging multiple SIRs if multiple insureds or more than one Evanston Policy could apply to a particular lawsuit.  Evanston's coverage-defeating interpretation of the SIR Endorsements to the Evanston Policies suggests that Policyholders are afforded greater protection from lawsuits by purchasing less insurance from Evanston, rather than more.  Evanston's assertion that the amount of protection afforded is inversely proportional to the amount of insurance purchased is in bad faith and defies all logic.

178.    As a result, during settlement negotiations concerning the JCS Probation Cases, Evanston has consistently refused to cooperate or offered only a fraction of the settlement authority requested and recommended by the defense counsel, and currently Evanston chose not to participate in any settlement discussions by denying coverage to the Policyholders.

179.    Evanston's bad faith conduct has even included demanding reimbursement payments from the Policyholders after Evanston changed its interpretation of the SIR Endorsements.

180.    Evanston's one-sided behavior exposes the Policyholders to the risk of judgments in excess of the limits of each of the Evanston Policies in the Underlying Actions, and has compelled the Policyholders to defend themselves in situations where the terms of the Evanston Policies obligated Evanston to do so.

181.    Despite previously recognizing a duty to defend the Policyholders in the initial JCS Probation Cases, Evanston has not taken any part in the defense of any of the cases.

182.    Evanston has a clear conflict of interest, but is ignoring the interests of its Policyholders in favor of its own interests.  Evanston is acting only out of its self-interest.

183.    In refusing and ignoring repeated recommendations and requests for settlement authority from its defense counsel and the Policyholders, within the available limits of liability, Evanston has not offered a reasonable basis or explanation for its behavior, despite repeated demands.  Evanston has not provided any of its own strategy to settle any case, other than attempting to compel the Policyholders to pay more than the policies require.

184.    Although Evanston initially recognized full coverage under the policies and did not attempt to impose numerous SIRs for each of the Underlying Claims, Evanston altered its coverage positions in bad faith to the detriment of the Policyholders in the numerous ways described above.

## COUNT I – DECLARATORY JUDGMENT

185.    The Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

186.    As set forth above, Evanston sold the Policyholders a variety of policies providing a defense against and covering losses arising from claims for medical professional and probation-related injuries, including Section 1983 claims and claims for Personal and Advertising Injury, among other things.

187.    Evanston has a duty to defend the policyholders and should be required to defend and protect them because there is a potential for coverage under the policies for each of the Underlying Claims.

188.    As a direct and proximate result of Evanston's refusal to acknowledge full coverage for the Underlying Claims and to provide adequate settlement authority and timely

reimbursements and as a direct and proximate result of Evanston's changing coverage positions and improper demands for reimbursement, the Policyholders have suffered and will continue to suffer serious harm, including by incurring defense and settlement costs that Evanston agreed to insure but which it consistently refuses to pay in full for the Underlying Claims.

189.    The Policyholders are entitled to a declaratory judgment by this Court of their rights and of Evanston's obligations to provide coverage for the Underlying Actions within the limits of liability of the Evanston Policies and to indemnify the Policyholders for all reasonable settlements and damages that may be awarded relating to the Underlying Claims.

190.    This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

191.    The Policyholders are entitled to have the Policies interpreted in a reasonable manner that maximizes the available insurance coverage.

192.    Declaratory Relief from this Court will resolve outstanding issues between the Policyholders and Evanston regarding the Policyholders' rights under the Policies relating to the Underlying Claims.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201-22, the Policyholders seek judgment in their favor as follows:

(a)    The entry of an Order declaring that Evanston is obligated under applicable law and the Policies to defend and provide coverage to the Policyholders in the Underlying Claims within the limits of liability of the policies, in excess of the single lowest potentially applicable SIR per Underlying Claim, except in the event more than one Policy's limits are needed to resolve an Underlying Claim;

(b)    The award of such relief as the Court deems just and appropriate.

## COUNT II – BREACH OF CONTRACT

193.    The Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

194.    Evanston owes a duty to pay for costs of defending its Policyholders and for the costs of settlements and judgments involving the Policyholders in each of the Underlying Claims, in excess of the applicable SIR.

195.    The Policyholders provided appropriate notice to Evanston and fulfilled all conditions to payment under the Policies.

196.    By denying coverage to the Policyholders and breaching the Policies Evanston waived any further rights to insist on any other policy conditions, including conditions precedent.

197.    For each of the Underlying Claims, Evanston has refused to recognize or denied its duty to its insureds, and thereby breached its contract with the Policyholders.  In some instances, Evanston has ignored or failed to respond to notices provided by the Policyholders.

198.    The Underlying Claims are each covered, or at least potentially covered so as to trigger Evanston's duty to defend, by the terms of the Evanston Policies, which provide coverage for the claims alleged in the Actions in excess of the applicable SIR.

199.    Because Evanston has refused to provide coverage or failed to make appropriate payments to the Policyholders under the Policies and inappropriately made reimbursement demands upon the Policyholders, the Plaintiffs suffered and continue to incur money damages.

200.    Accordingly, Evanston is liable to the Policyholders for breaching its duty to defend and its duty to indemnify, and is liable for damages in an amount to be determined at trial but in excess of $75,000.00, and is estopped from asserting any defenses to coverage that Evanston failed to timely assert under its insurance policies.

WHEREFORE, the Policyholders seek judgment in their favor as to Count II as follows:

(a)     The entry of an award requiring Evanston to pay the Policyholders all monetary damages suffered by the Policyholders caused by Evanston's breach of contract, without limitation, including compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and costs; and

(c)     The award of such additional relief as the Court deems just and appropriate.

## COUNT III – BAD FAITH AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

201.    The Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

202.    The Policies all contain an implied covenant of good faith and fair dealing that imposes on Evanston an obligation to not do anything to injure the rights of the Policyholders to receive the benefits of those Policies and to not place its own interests above those of its Policyholders.

203.    Pennsylvania has codified this obligation by statute in 42 Pa.C.S. § 8371, which provides bad faith remedies for "an action arising under an insurance policy."

204.    Evanston has an obligation to act in good faith towards the Policyholders in every decision it makes regarding the Underlying Claims, including when responding to settlement offers.

205.    Evanston has repeatedly placed its own interests ahead of those of its Policyholders to the detriment of the Policyholders, and continues to refuse to undo its bad faith decisions.

206.    Evanston has acted in bad faith towards the Policyholders with respect to the Underlying Claims by: a) denying coverage for claims previously recognized as being covered;

b) repeatedly changing coverage defenses and positions regarding the number of SIRs that need to paid by the Policyholders; c) refusing to provide recommended settlement authority; d) failing to pay for any defense costs after accepting the duty to defend the Underlying Claims; e) demanding contributions from its own Policyholders for settlements that are fully covered; and f) failing to respond to notices of claims on a timely basis or at all.

207.     Evanston has adopted unreasonable coverage-limiting interpretations of the terms and conditions in the Policies to the detriment of its Policyholders and insureds, and withdrawn and reasserted such interpretations, in bad faith.

208.     The self-interested conduct of Evanston in ignoring or contradicting settlement recommendations of defense counsel and in refusing to pay for any of the costs of defense counsel in the JCS Probation Cases, unnecessarily exposes the Policyholders to the risk of an adverse verdict in excess of the limits of liability of their insurance policies.

209.     As a result of Evanston's refusal to honor its obligation to act in good faith with respect to the Policyholders' requests for coverage in the Underlying Claims, the Policyholders have incurred costs and expenses, including investigation costs and attorneys' fees and costs in connection with their pursuit of insurance coverage for the Underlying Claims, including their fees and costs in this coverage action.

WHEREFORE, the Policyholders seek judgment in their favor as to Count III as follows:

(a)     The entry of an award requiring Evanston to pay the Policyholders all monetary damages suffered by the Policyholders caused by Evanston's unfair and unreasonable breaches of the duty of good faith and fair dealing, including without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs;

   (b)  Exemplary damages in an amount allowable by law; and

   (c)  The award of such additional relief as the Court deems just and

appropriate.

       REED SMITH LLP


Dated:  October 2, 2020   By:   s/Luke E. Debevec
        John N. Ellison (PA 51098)
        Luke E. Debevec (PA 92860)
        Three Logan Square
        1717 Arch Street, Suite 3100
        Philadelphia, PA 19103
        T:  (215) 851-8100
        F:  (215) 851-1420
        jellison@reedsmith.com
        ldebevec@reedsmith.com

        *Attorneys for Plaintiffs Wellpath, LLC;*
        *Correctional Healthcare Companies, LLC;*
        *Correctional Healthcare Holding Company,*
        *LLC; CHC Companies, LLC; Wellpath Group*
        *Holdings, LLC; and Judicial Correction*
        *Services, LLC*